UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

LISA N. McCLELLAN )
)
V. ) NO. 2:13-CV-199
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation following the administrative denial by an Administrative Law Judge ["ALJ"] of her claim for disability insurance benefits under the Social Security Act. The plaintiff has filed a Motion Judgment on the Pleadings [Doc. 19], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 21].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was a younger individual at the time of the date she first alleged her disability began, April 6, 2010. However, she became an individual closely approaching advanced age on November 2, 2011, and later amended her disability onset date to that date. Her insured status apparently ended December 31, 2012. She has a high school education. Her past relevant work was as a hairdresser, which is skilled and light.

Plaintiff's medical history is summarized in the Commissioner's brief as follows:

> In 2010, Plaintiff reported a ten-year history of knee, hip, and back pain and muscle spasms (Tr. 213). On June 3, 2010, she reported to her primary care physician, Amylyn Crawford, M.D., that she was unable to work due to her inability to stand for long periods of time due to back and knee pain and that her first application for disability was denied (Tr. 185). Dr. Crawford did not note any clinical findings relating to Plaintiff's alleged pain and noted Plaintiff smoked half of a pack of cigarettes per day, despite her diagnosis of COPD (Tr. 185). Dr. Crawford ordered an x-ray of Plaintiff's knee, which demonstrated only mild joint space narrowing in the medical compartment bilaterally, and Dr. Crawford questioned whether Plaintiff had "slight" osteoarthritis (Tr. 185, 188).
> On October 5, 2010, Dr. Crawford noted Plaintiff stated she had "been walking the dog a little bit" and had "trouble with spasms in back after [she] did 2 haircuts in a row (on family)" (Tr. 236). Plaintiff also told Dr. Crawford her pain medication worked well (Tr. 236). Dr. Crawford noted no clinical findings relating to Plaintiff's pain allegations and refilled her medications (Tr. 236).
> In August of 2010, Plaintiff underwent a physical examination by Samuel D. Breeding, M.D. (Tr. 212-19). Plaintiff reported to Dr. Breeding that she suffered from anxiety and bipolar disorder, emphysema, muscle spasms, and knee, hip, and back pain (Tr. 212-13), but that the "main reason she is unable to work is due to her anxiety/depression" (Tr. 214). Plaintiff related that she smoked half a pack of

2

cigarettes daily and stopped using cocaine, presumably after she spent a month in jail for use and sale of the drug (Tr. 213). Dr. Breeding noted normal range of motion in all major joints, no sensory deficits, and full strength in all major muscle groups (Tr. 214). Dr. Breeding also indicated Plaintiff's gait was normal but slightly slow and she used no assistive device (Tr. 213). He opined Plaintiff could lift 35 pounds occasionally, sit for four to six hours in an eight-hour day, stand for two to four hours in an eight-hour day, and "may need to sit or stand as needed for comfort" (Tr. 214).

On January 19, 2011, Plaintiff presented to the emergency department of a hospital and reported falling and injuring her right knee five days earlier, but the provider did not indicate she was unable to bear weight or that she used a cane (Tr. 243-44). A physical examination revealed Plaintiff's feet, legs, and back were normal and non-tender, and sensation and motor activity were normal (Tr. 243-44). X-rays demonstrated no acute injury or significant joint space narrowing (Tr. 245). The only significant findings were some bone spurs noted on the x-ray report and Plaintiff's own reports of severe pain (Tr. 243-45). Plaintiff was diagnosed with knee strain and prescribed pain medication (Tr. 244).

Plaintiff returned to Dr. Crawford's office on February 3, 2011, and Dr. Crawford again omitted any clinical findings related to Plaintiff's knee, hip, and back pain in her treatment notes (Tr. 247). However, Dr. Crawford noted Plaintiff's subjective complaints and report of her activities (Tr. 247). For example, Plaintiff stated that she was using a cane, which "help[ed] to take pressure off her back," only showered once per week, went grocery shopping weekly, and needed help from her disabled husband to clean herself after a bowel movement (Tr. 247). Dr. Crawford completed Plaintiff's application for a "disabled person license plate" (Tr. 248).

On May 25, 2011, Plaintiff underwent a psychological examination by B. Wayne Lanthorn, Ph.D. (Tr. 252-58). Plaintiff drove herself to the evaluation and appeared clean and groomed, with groomed eyebrows and fingernails (Tr. 252). She reported to Dr. Lanthorn that she stopped using drugs and alcohol but had been charged with several drug- and alcohol- related offenses and was currently on probation (Tr. 253). Dr. Lanthorn observed that Plaintiff walked slowly with a cane (Tr. 254). She reported increasingly experiencing more pain but that "medications did help her considerably" (Tr. 254). Plaintiff did not describe any symptoms of bipolar disorder (Tr. 254). She stated she went to NA [Narcotics Anonymous] meetings and attended church, did dishes and housework, and occasionally drove to visit her daughter who lived four hours away (Tr. 255).

Dr. Lanthorn administered several tests and indicated Plaintiff's "overall effort seemed marginal" and she "did not put forth her best effort" (Tr. 254, 256). Dr. Lanthorn noted Plaintiff answered some questions correctly but later changed her responses to make them incorrect or missed easier items and correctly answered more difficult ones (Tr. 256). Plaintiff's "malingering index" on a personality assessment was significantly elevated, and her responses suggested she was portraying herself negatively and did not answer questions in a completely forthright manner (Tr. 257). On the Test of Mental Malingering, Plaintiff's scores in all three trials indicated she attempted to malinger (Tr. 257).

3

In May of 2011, Plaintiff discussed her application for disability with Dr. Crawford, but treatment notes mention no findings to support Plaintiff's pain complaints (Tr. 266). On August 11, 2011, Plaintiff saw Dr. Crawford, who noted Plaintiff walked with a cane, had an antalgic gait, and was slow to change position, but did not note any objective clinical findings (Tr. 265).

A January 9, 2012, an MRI of Plaintiff's lumbar spine demonstrated that a previously observed protrusion at L4-5 had resolved (Tr. 287-88). Plaintiff had developed osteoarthritis at that level, and she had a mild protrusion at L1-2, but there was no significant stenosis (Tr. 287-88). On January 18, 2012, Plaintiff returned to see Dr. Crawford, who noted Plaintiff's myriad pain complaints and allegations regarding her limited activities, but, other than basic vital signs, Dr. Crawford's treatment notes contain no objective clinical findings (Tr. 290-93).

Dr. Crawford authored two letters in connection with Plaintiff's claims for DIB, neither of which contain any opinion as to Plaintiff's limitations (Tr. 180, 299). The letters merely list Plaintiff's diagnoses, and one letter notes that Plaintiff reports she is unable to work as a hairdresser any longer, but Dr. Crawford does not offer her assessment of Plaintiff's ability to work (Tr. 180, 299). On October 28, 2010, Karla Montague-Brown, M.D., a State agency reviewing consultant, opined Plaintiff could perform light work but must avoid concentrated exposure to pulmonary irritants (Tr. 226-34)

[Doc. 22, pgs. 2-5].

At the administrative hearing, the ALJ took the testimony of Cathy Sanders, a Vocational Expert ["VE"]. He asked Ms. Sanders to first assume that the plaintiff had the physical limitations set forth in the evaluation by Karla Montague-Brown, a state agency non-examining physician, on October 28, 2010, who opined that the plaintiff could perform light work while avoiding concentrated exposure to fumes, etc. (Tr. 226-234). Ms. Sanders opined that with those limitations there were jobs available as an entry-level office assistant, with 8,700 in Tennessee and 423,000 in the nation; telephone answering clerk with 3,600 in Tennessee and 97,000 in the nation; and as a food server, with 5,800 in Tennessee and 5,800 in the nation. These were said to be representative jobs from a larger list. When asked if the plaintiff had the mental limitations described by Dr. Lanthorn (Tr. 252-263), the number of jobs would drop by 25%, but would still be a significant number of jobs. (Tr. 37-38).

4

In his hearing decision, the ALJ found that the plaintiff had severe impairments of "arthralgias to include hip knee and back pain; emphysema and an affective mood disorder" Although he considered plaintiff's obesity and its effect on her physical impairments, he found that it was not severe. He also found that her high blood pressure was well controlled and not severe. (Tr. 13).

He then opined that she did not meet any listed impairment. (Tr. 13). He then considered the degree of limitation imposed by her mental impairment. He found she had a mild restriction in her activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. He found that she had suffered one episode of decompensation. (Tr. 13-14).

The ALJ then stated that the plaintiff had the residual functional capacity ["RFC"] to perform light work, while avoiding concentrated exposure to fumes and other situations which would exacerbate her emphysema. He found she had no limitations on understand, remember and carry out simple instructions and to make judgments on simple work-related decisions. He found she was mildly impaired regarding complex instructions and judgment making. He found she was mildly impaired in her ability to interact with supervisors and the public and moderately impaired as to dealing with unusual work situations and to changes in the routine work setting. (Tr. 14).

He then proceeded to determine the plaintiff's credibility, finding subjective complaints which would preclude functioning at the RFC he found to be not credible. To support this he discussed the physical findings of Dr. Breeding, who found a normal range of motion and 5/5 muscle strength. He discussed Dr. Crawford's findings and the results of

5

her MRI and x-rays. (Tr. 15-16). He then noted the findings of Dr. Lanthorn that the plaintiff did not put forth her best effort on testing during her consultative mental exam, that she apparently deliberately distorted her mental condition, and that the tests suggested malingering on all three trials. (Tr. 17). Even though the plaintiff described very limited activities of daily living, the ALJ did not accept them at full value because of a lack of objective verification and no link between such limited activity and the plaintiff's medical records. (Tr. 18).

He then discussed the weight given to various examiners and providers. He gave great weight to Dr. Lanthorn. He gave little weight to Dr. Crawford, because she basically reported what the plaintiff told her that her limitations were. He gave some weight to Dr. Breeding, but obviously gave great weight to the state agency physician who opined she could do a greater range of light work than did Dr. Breeding. (Tr. 18).

Even though she could do no past relevant work, based upon the VE's testimony, he found there were a significant number of jobs which the plaintiff could perform. Accordingly, he found that she was not disabled.

Plaintiff asserts that the ALJ did not mention or properly consider the plaintiff's use of a cane, and thus, that his RFC finding is incorrect in finding that the plaintiff can stand and/or walk for up to six hours in an 8-hour workday. This is a sub-issue of the broader complaint regarding the ALJ's finding that the plaintiff was not completely credible.

In *general*, the Court finds no fault with the ALJ's credibility determination. He based his finding that she was not credible beyond the determined RFC upon the examination of Dr. Breeding, Dr. Crawford's seeming lack of objective findings, and the fact Dr.

Lanthorn's findings regarding exaggeration of symptoms, inconsistent effort and malingering found during his mental exam. Regarding the latter, there is no reason why a fact finder could not take into account prevarication about *mental* symptoms in determining a person's credibility regarding *physical* symptoms. Also, the ALJ gave valid reasons for doubting the plaintiff's self-reported lack of daily activities.

However, there is a large issue regarding the plaintiff's physical capacity *after* the examination by Dr. Breeding on August 18, 2010 and the state agency physician review of the records on October 28, 2010. Plaintiff reported that she began using a cane in January of 2011. Dr. Crawford first mentions the plaintiff's use of a cane on February 3, 2011 (Tr. 247). Dr. Crawford did not apparently advise the plaintiff to begin using a cane, but describes that use as something the plaintiff herself was doing. If this sort of parroting of the plaintiff's described activities were all that there was, there would be no basis for questioning the Commissioner's decision.

However the evidence does not end there. On February 3, 2011, Dr. Crawford completed a form for the plaintiff to obtain a disabled licence plate from the State of Tennessee. Of course, this fact has no significance on the ultimate issue of whether plaintiff is disabled under the Social Security Act. However, in the form Dr. Crawford does state that the plaintiff used a cane. The fact a physician would recommend an individual for a handicapped licence plate and state that the person used a cane is at least some indication that the doctor felt the cane was needed.

Then, on January 9, 2012, an MRI was performed of the plaintiff's lumbar spine (Tr. 287-88). While an earlier MRI in February 2004 had shown a disc protrusion at L4-5, the

7

2012 MRI showed that condition had resolved. However, a disc protrusion into the thecal sac was noted at the L1-L2 level, albeit "mild" in nature. Nine days later, Dr. Crawford saw the plaintiff again. In describing the plaintiff's conditions, this time in relation to her knees, Dr. Crawford states "Patient has to use cane to ambulate." This statement is not a mere recital of something the plaintiff is doing on her own, but can certainly be interpreted as an opinion of Dr. Crawford. At the very least, it is ambiguous.

The ALJ did not address the plaintiff's use of a cane in the decision, even though it was mentioned in several reports in the record, including Dr. Crawford's. The legitimate need to use a cane would have an enormous impact upon the ability to meet the standing and walking requirements of light work. Even before the appearance of the cane in plaintiff's medical history, Dr. Breeding opined she could not meet the walking requirements of a light work. This was countered by the state agency physician, but that too was before the first mention of the cane, the 2012 MRI, and the office note of Dr. Crawford saying the plaintiff has to use a cane to ambulate. The ALJ was aware of the MRI report, and stated what it said, but this is not a medical interpretation, but a recitation of contents by a layman. Whether it is medically necessary for plaintiff to use a cane or other assistive device is an issue for the ALJ to deal with, not this Court. With this issue still unresolved, there is not substantial evidence to support the RFC finding that plaintiff could physically stand and walk enough to perform light work.

Accordingly, it is respectfully recommended that the case be remanded to the Commissioner for further evaluation of the plaintiff's RFC, noting that her insured status expired December 31, 2012. It is further recommended that plaintiff's Motion for Judgment

8

on the Pleadings [Doc. 19] be GRANTED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 21] be DENIED.[1]

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).